Perry Collins West v. State

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-031-CR

PERRY COLLINS WEST APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

A jury convicted Appellant Perry Collins West of driving while intoxicated, and the trial court, having accepted West’s pleas of true to the enhancement and repeat offender paragraphs, sentenced him to six years’ confinement.  In one point, West argues that the trial court abused its discretion by allowing the State to elicit testimony from him that he had been arrested more than twenty times. 
 
Because West did not “open the door” to this impeachment evidence, we hold that the trial court abused its discretion by permitting the State to elicit this testimony.  Applying the required harm analysis, we hold that the error was harmless.  Consequently, we will affirm.

II.  Factual Background

On June 2, 2002, Fort Worth Police Officer Todd Greer was patrolling  the west side of Fort Worth for prostitution activity.  He observed a young female, whom he described as provocatively dressed, enter a white pickup truck driven by West.  Officer Greer followed the truck briefly, noticed that the truck’s license plate light was out, and initiated a traffic stop.  Officer Greer noticed the strong odor of alcohol emanating from the truck’s interior and requested the assistance of another officer.  Officer George Rusnak arrived and had West perform three field sobriety tests, the HGN, the walk and turn, and the one leg stand tests.  West performed poorly on the tests, and Officers Greer and Rusnak arrested West after concluding he was intoxicated.  At the city jail, West could not provide an adequate breath sample for a breath test.  

West was charged with driving while intoxicated and pleaded not guilty. At trial, he testified that he was not intoxicated at the time of his arrest.  During cross-examination, West testified that he “was shocked that they took [him] to jail in the first place” and that he “was totally shocked to be arrested in the first place.”  Soon thereafter, the following exchange took place:

[Prosecutor]: Now, when your father testified for you yesterday, he testified that you left the house about 8:00.  Do you remember that?

[West]: Yes, I do.

[Prosecutor]: Why did you tell the officer on the video that you left the house at seven?

[West]: I don’t know.  I have no clue.

[Prosecutor]: Wouldn’t you agree that likely the way you remember things back on September - - excuse me, June the 2nd of 2002 is more accurate than almost a year and a half later?

[West]: Maybe in one respect, but in another respect it isn’t.

[Prosecutor]: Did you take notes after this happened?

[West]: 
No.  But, again, I was so shocked by being arrested and placed in that position of being handcuffed and taken to jail for DWI
, sure I may have - - I may have made a mistake on the time.  You bet. [Emphasis added.]

After approaching the bench, the prosecutor argued that West had “just opened the door to all of his arrests” by stating that “he was shocked and amazed to being arrested.”  Outside the presence of the jury and in response to the prosecutor’s inquiry as to why he was shocked at being arrested, West stated, “Because this time was the first time I have been arrested since 1995.  This time is when I made a complete effort to turn my life around.  That’s why it shocked me so much.”  The prosecutor then pointed out, however, that West had been arrested in 1996 and 2002.  The trial court subsequently permitted the State to ask the following question in the presence of the jury: “Mr. West, isn’t it true that you’ve been arrested more than twenty times.”  West responded, “Yes.”  No further questions were proposed concerning West’s prior arrests.

III.  Extraneous Offenses Evidence

In his sole point, West argues that the trial court erred by overruling his objection and permitting the State to elicit testimony that he had been arrested more than twenty times.  West contends that his statement that he was “shocked” at being arrested was not a blanket assertion denying any prior trouble with the law and that the “inflammatory evidence” of twenty prior arrests allowed the jury to convict him of being a criminal generally.  The State argues that the evidence was admissible to rebut and correct “the false impression that [West’s] gratuitous statements created” by implying that he had never been in trouble with the law. 

A.  Standard of Review

We review a trial court’s ruling admitting or excluding evidence for an abuse of discretion.  
Prystash v. State
, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1102 (2000); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  Appellate courts should give great discretion to the trial courts in matters of relevancy, reversing only if the trial court acts outside “the zone of reasonable disagreement.”  
Montgomery
, 810 S.W.2d at 391.  Thus, so long as the trial court’s decision to admit or exclude evidence falls in the zone within which reasonable minds may differ, appellate courts should refrain from disturbing the trial court’s decision on appeal.  
Id
.;  
Karnes v. State
, 127 S.W.3d 184, 189 (Tex. App.—Fort Worth 2003, no pet.).

B.  False Impressions

An accused puts his character for veracity in issue by taking the stand, and he may be impeached in the same manner as any other witness.  
See Hammett v. State
, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986).  Generally, prior offenses are inadmissible for impeachment purposes unless the offense resulted in a final conviction for either a felony or a crime involving moral turpitude and the conviction is not too remote in time.  
See Ochoa v. State
, 481 S.W.2d 847, 850 (Tex. Crim. App. 1972); 
Turner v. State
, 4 S.W.3d 74, 78-79 (Tex. App.—Waco 1999, no pet.); 
see also 
Tex. R. Evid.
 608, 609. However, an exception arises when a defendant testifies and leaves a false impression as to the extent of his prior arrests, convictions, charges against him, or “trouble” with the police generally.  
See Prescott v. 
State, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988);
 
Ochoa
, 481 S.W.2d at 850.  In such a case, the defendant is deemed to have “opened the door” to an inquiry into the veracity of his testimony, and evidence of the defendant’s prior criminal record is admissible to correct the false impression.  
See Martinez v. State, 
728 S.W.2d 360, 362 (Tex. Crim. App. 1987); 
Turner
, 4 S.W.3d at 79.

Generally, the false impression the State seeks to rebut must be created by the defendant through direct examination.  
See Wheeler v. State
, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002).  However, when a defendant voluntarily testifies on cross-examination concerning his prior criminal record, without any prompting or maneuvering on the part of the State, and in so doing leaves a false impression with the jury, the State is allowed to correct that false impression by introducing evidence of the defendant’s prior criminal record.  
Martinez
, 728 S.W.2d at 362; 
see also Roberts v. State
, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d).

Here, West stated that he was “shocked” that he was being arrested, handcuffed, and taken to jail.  He did not state that he had never been “in trouble” with the law, that his record was clear of any prior arrests, or that he had never been arrested for DWI.  We disagree with the State that West’s statements created the false impression that he had not previously been arrested.  
Compare Turner, 
4 S.W.3d at 78-80 (holding State could impeach defendant with subsequent, violent police confrontation when defendant testified six times on direct examination that he was polite to police officer who arrested him); 
Martinez
, 728 S.W.2d at 360-61 (holding State could impeach defendant with prior convictions where she responded to prosecutor’s question concerning why she was scared by stating, “That was the 
first time 
I had been busted, you know”).  Nor did West’s testimony that he was shocked provide an abbreviated account of his past arrests.  
Compare
 
Reese v. State
, 531 S.W.2d 638, 640-41 (Tex. Crim. App. 1976) (holding defendant’s response to “[w]hat kind of trouble do you have with the law” discussing a single prior conviction opened door to admission of three other prior convictions).  Likewise, West’s testimony that he may have misjudged the time on the night of the offense because he was shocked at being arrested does not constitute an attempt by West to portray himself in a manner inconsistent with his prior criminal record.  
Compare
 
Creekmore v. State
, 860 S.W.2d 880, 892-93 (Tex. App.—San Antonio 1993, pet. ref’d) (op on reh’g) (allowing evidence of other sexual assaults committed by defendant against children after defendant testified that he would never sexually abuse child).

West’s first two statements that he was shocked were made in response to the prosecutor’s questions concerning his performance on the videotaped sobriety tests, and the third statement was made in response to the prosecutor’s questions concerning whether West’s memory would have been more accurate on the night of the offense or at the time of trial.  
West’s statements that he was shocked communicated his feelings at the time of his arrest, not an impression about his criminal history; a person may still feel shocked at being arrested, even if the person has been previously arrested multiple times.  Here, the relevant questions, the answers themselves, and the overall tenor of the cross-examination did not create a false impression with the jury concerning West’s prior criminal history.  
See Prescott, 
744 S.W.2d at 131.  Accordingly, West did not “open the door” to impeachment evidence, and consequently, the State should not have been permitted to ask West in front of the jury whether he had been arrested over twenty times.  We hold that the trial court abused its discretion by allowing the State to ask West this question.  
See Montgomery
, 810 S.W.2d at 392-93.

C.  Harm Analysis

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
Tex. R. App. P.
 44.2.  Generally, the erroneous admission or exclusion of evidence is non-constitutional error governed by rule 44.2(b) if the trial court’s ruling merely offends the rules of evidence.  
See Solomon v. State
, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).  A reviewing court is to disregard non-constitutional error that does not affect the substantial rights of the defendant.  
Tex. R. App. P.
 44.2(b).  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  In making this determination, we review the record as a whole.  
Kotteakos
, 328 U.S. at 764-65, 66 S. Ct. at 1248.  

When performing a harm analysis under rule 44.2(b), we consider “any testimony or physical evidence admitted for the jury’s consideration, the nature of the evidence supporting the verdict, [and] the character of the alleged error and how it might be considered in connection with other evidence in the case.”  
Morales v. State
, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  We may also consider closing arguments, evidence of the defendant’s guilt, and the jury instructions.  
See Motilla v. State
, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002); 
Morales
, 32 S.W.3d at 867.

In the instant case, Officer Greer testified that when he initiated the traffic stop of West, West brought his vehicle to a stop in the middle of an intersection.  Because they were blocking traffic, Officer Greer instructed West on his PA system to move forward out of the intersection.  West did not respond, so Officer Greer approached the vehicle on foot and again instructed West to pull forward, out of the intersection.  Officer Greer smelled alcohol when he approached West’s vehicle and then requested assistance with the stop.  

Officer Rusnak arrived and conducted three field sobriety tests with West. Officer Rusnak testified that on the HGN test West exhibited vertical nystagmus and nystagmus at maximum deviation.  During the walk and turn test, West initially did not follow Officer Rusnak’s directions, West was unable to maintain his balance during the instruction phase, and he was unable to complete the initial nine steps out.  West swayed three to four inches from side to side during the one-leg stand test.  Both Officer Greer and Rusnak concluded that West was intoxicated.
(footnote: 1) 

Officer Pierce conducted a few evaluations of West and testified that West did not satisfactorily complete them.  West was also unable to provide an adequate breath sample for the intoxilyzer.  Officer Pierce concluded that West had “lost [normal use of] his mental faculties” because of alcohol. 

As an excuse for his poor performance on the tests, West testified that he received numerous injuries in Vietnam.  He also testified that he had not been drinking that day, but that he did take a “swallow” of beer just before being pulled over. 

In terms of the evidentiary error itself, the State asked West only one question concerning his arrests.  After this question was asked and answered, the prosecutor asked, “What is your driver’s license number?”  Thus, the State neither inquired into nor dwelled on West’s twenty prior arrests in any manner.  During closing argument, the State reminded the jury that West had a prior conviction for felony driving while intoxicated and theft, but it did not address West’s other prior arrests.  Additionally, the court’s charge instructed  the jury that “[a]ll persons are presumed to be innocent . . . .  The fact that the defendant has been arrested, confined, or indicted for or otherwise charged with the offense gives rise to no inference of guilt at the defendant’s trial.” We hold that, in the context of the entire case against West, the trial court’s error in permitting the State to ask West whether he had been arrested “more than twenty times” did not have a substantial or injurious effect on the jury’s verdict and did not affect West’s substantial rights.  
See King,
 953 S.W.2d at 271
.  
Thus, we disregard the error.  
See 
Tex. R. App. P.
 44.2(b).  We overrule West’s sole point.

IV.  Conclusion

Having overruled West’s only point, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

LIVINGSTON, J. filed a concurring opinion.

PUBLISH

DELIVERED: May 26, 2005

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-031-CR

PERRY COLLINS WEST APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

CONCURRING OPINION

------------

I write separately from the majority opinion to diverge from its analysis of the extraneous offense evidence. 

When we review a trial court’s ruling on the admission or exclusion of evidence, we do so under an abuse of discretion standard.  
Prystash v. State
, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1102 (2000).  Further, a trial court’s evidentiary ruling should be affirmed if it is correct under any theory applicable.  
Sauceda v. State
, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).  

Generally, specific acts of misconduct may not be introduced to impeach a party or witness.  
Prescott v. State
, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988); 
Reyna v. State
, 99 S.W.3d 344, 349 (Tex. App.—Fort Worth 2003, pet. ref’d).  Opposing counsel may introduce evidence about otherwise irrelevant past criminal history when a witness, during direct examination, “opens the door” or “leaves a false impression with the jury as to the extent of either his prior arrests, convictions, charges, or trouble with the police.”  
Reyna
, 99 S.W.3d at 349 (citing
 Prescott
, 744 S.W.2d at 130-31).  Additionally, as the majority notes, the State may also correct a false impression left by a defendant who voluntarily testifies during cross-examination about his prior criminal record by offering evidence of his prior record.  
Martinez v. State
, 728 S.W.2d 360, 362 (Tex. Crim. App. 1987).  The exception must relate to the defendant’s testimony that is volunteered and related to collateral matters.  
Hall v. State
, No. 06-03-00253-CR, 2005 WL 525536, at *10 (Tex. App.—Texarkana Jan. 25, 2005, no pet.) (citing 
Lopez v. State
, 928 S.W.2d 528, 531 (Tex. Crim. App. 1996)). The opponent must correct the false impression via cross-examination of the witness who left the false impression instead of calling other witnesses to correct the false impression.  
Wheeler v. State
, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002).  “[A]n appellant who ‘opens the door’ to otherwise inadmissable evidence risks having that evidence admitted and used against him.  However, the party offering the evidence may not ‘stray beyond the scope of the invitation.’”  
Feldman v. State
, 71 S.W.3d 738, 755-56 (Tex. Crim. App. 2002) (citing 
Schultz v. State
, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997)).  

Here, during the State’s cross-examination of appellant, he testified that he was “shocked that they took [him] to jail in the first place” and that he “was totally shocked to be arrested in the first place.”  While further trying to pursue a discrepancy in appellant’s testimony regarding the timeline, the prosecutor asked appellant whether he had taken notes that would substantiate his prior recollection.  In response to this question, appellant denied that he had taken notes and further volunteered once again that he was “so shocked by being arrested and placed in that position of being handcuffed and taken to jail for DWI” as his justification for making a mistake on the time he left his father’s house.  Appellant’s statements as to “being shocked” were apparently voluntary and made with a view to explain the discrepancy in his testimony regarding the timeline, to justify his behavior regarding the sobriety tests and to explain his refusal to complete a valid breath test.  The trial court only allowed the State to ask one question of the appellant to clear up the false impression he left implying he had not been arrested before by asking only if he had been arrested more than 20 times. 

I would therefore conclude that the State’s one question into appellant’s number of prior arrests only was strictly limited to rebut the false impression appellant attempted to create before the jury and did not stray beyond the scope of the invitation.  For this reason, I would conclude that the trial court’s ruling was not outside the zone of reasonable disagreement and it was therefore within the trial court’s discretion to admit the limited rebuttal question.  For this reason, I respectfully concur in the majority’s decision.

TERRIE LIVINGSTON

JUSTICE

PUBLISH

DELIVERED: May 26, 2005

FOOTNOTES
1:
Officer Rusnak further testified that West had a strong odor of alcohol on his breath and person, that he had bloodshot or dilated eyes, and that his speech was slurred. 

COMMENTS AND ANNOTATIONS
Comment 1:
Majority by Justice Walker; Concurrence by Justice Livingston