# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00462-CR

**Harry Dane Drew, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
## NO. 2C08-00613, HONORABLE JOHN MICHAEL MISCHTIAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant, Harry Dane Drew, guilty of a second offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a) (West 2003), § 49.09(a) (West Supp. 2008). The trial court assessed punishment at 365 days in the Bell County Jail, plus a fine of $500 and court costs. Drew contends that the trial court erred by admitting certain testimony over his objection, that he received ineffective assistance of counsel, and that certain evidence was not properly provided to him before trial by the county prosecutor. We affirm the judgment of the trial court.

On December 29, 2007, Drew was stopped by Department of Public Safety Trooper Kirk Washington because only one of Drew's headlights was illuminated. After stopping Drew, Washington observed certain suspicious behavior, including "inconsistency" in answering questions, as well as the "strong odor" of alcohol on Drew's breath, and an open can of beer in the front seat. Based on these observations, Washington administered the Horizontal Gaze Nystagmus (HGN) test—a field sobriety test that measures involuntary eye movement to evaluate whether a person

may be intoxicated or unable to drive a car. According to Washington, he found "six of six clues" and, therefore, concluded that Drew was intoxicated. Although Drew performed satisfactorily on a "count-the-finger test" and on a "hand slapping count" test, Washington determined, based on the HGN results, that Drew was intoxicated and arrested him. At the police station, Washington again administered the HGN test and reached the same conclusion. At the station, Drew also failed a "walk and turn" test and a "one-leg stand" test. He declined to provide a breath sample.

On January 23, 2008, a criminal complaint and information was filed, alleging that Drew "operate[d] a motor vehicle in a public place while intoxicated" and that Drew had previously been convicted of driving while intoxicated. A jury found Drew guilty. The trial court assessed punishment at 365 days in the Bell County Jail, plus a fine of $500 and court costs.

In his first point of error, Drew argues that the trial court erred in overruling his objections to Washington's testimony about standardized field sobriety tests. Without citing any authority on this point, Drew contends that admission of Washington's testimony was error because Washington's testimony was, in fact, expert testimony, and nothing in the record shows how or where Washington was certified to administer these tests.[1]

A trial court has broad discretion in deciding whether a witness qualifies as an expert. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990). Likewise, it is the trial court's responsibility to determine whether proffered scientific evidence is sufficiently reliable and

---

[1] We note that Drew appears to be making what is actually a sufficiency of the evidence argument in the form of an admissibility argument. Citing *West v. State*, 169 S.W.3d 275, 279 (Tex. App.—Fort Worth 2005, pet. ref'd), Drew states that "[o]verruling the objections [to Washington's testimony] was crucial" because an officer who is certified to administer HGN tests "should have known the medication the Appellant was prescribed would have caused visible nystagmus."

2

relevant to assist the fact-finder. *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005). A trial court's ruling on the admissibility of scientific expert testimony is reviewed for an abuse of discretion. *Id.*

A party proffering testimony concerning a defendant's performance on the HGN test must show that the witness is an expert in the administration and technique of the test. *Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). An officer can be qualified as an HGN expert without regard to certification. *See Singleton v. State*, 91 S.W.3d 342, 348 (Tex. App.—Texarkana 2002, no pet.) (concluding that trial court could determine that officer was expert based on his knowledge, skill, experience, training, or education despite evidence that he was not certified to perform SFSTs); *Smith v. State*, 65 S.W.3d 332, 344 (Tex. App.—Waco 2001, no pet.) (holding that *Emerson* does not require that expert be certified before his testimony on subject of HGN test will be admissible); *Kerr v. State*, 921 S.W.2d 498, 502 (Tex. App.—Fort Worth 1996, no pet.) (refusing to interpret *Emerson* to require that expert must be certified).

Here, although he had no formal HGN certification, Washington testified that he had been trained in the administration of HGN. At trial, he explained how the test is administered, scored, and evaluated as well has how he examined Drew in particular. Washington testified that he had checked for "equal tracking and pupil size" because unequal pupil size "could be a result of a disease or a head injury," and unequal tracking would invalidate the HGN test. Finding Drew's pupils of equal size and tracking, Washington determined that Drew was a "good candidate" for the HGN test and proceeded to administer the test. According to Washington's testimony, he observed involuntary jerking from each eyeball. Washington testified that he observed "six out of six clues,"

3

which indicated to him that "this individual had been consuming alcohol, and it was causing involuntary jerking of his eyeballs."

Based on Washington's training and experience in HGN administration, the trial court allowed him to testify that "six out of six clues" on the HGN test indicates intoxication.[2]  Given the trial court's broad discretion to decide whether a witness qualifies as an expert, we cannot conclude that the trial court erred in admitting Officer Washington's testimony here.  *See Sterling*, 800 S.W.2d at 521.  Accordingly, we overrule Drew's first point of error.

In his second point of error, Drew argues that he was denied effective assistance of counsel because trial counsel failed to introduce evidence of Drew's "substantial physical medical conditions and multiple prescribed medication."  According to Drew, his medical conditions and medications, rather than intoxication, could have caused a positive HGN test.

We evaluate claims of ineffective assistance of counsel against the standard set forth in *Strickland v. Washington*.  *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999).  In deciding a claim of ineffective assistance of counsel, we must determine whether an attorney's performance was deficient and, if so, whether that deficiency prejudiced the defense.  *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  An attorney's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812.  Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is a

---

[2]  Objecting to Washington's testimony on this issue, defense counsel conceded that Washington was qualified to testify about the test because "he's been trained to give the test" but that testifying as to what a result of "six out of six clues" "tell[s] you" is "more along the lines of an expert answer as opposed to his role in just simply administering the test."

4

reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Id.* at 814. We review the effectiveness of counsel in light of the totality of the representation and the circumstances of each case. *Thompson*, 9 S.W.3d at 813.

In most cases, an undeveloped record on direct appeal is insufficient to satisfy the dual prongs of *Strickland* because the reasonableness of counsel's decisions often involves facts not appearing in the appellate record. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Without evidence of the strategy and methods involved concerning counsel's actions at trial, an appellate court should presume a sound trial strategy. *See Thompson*, 9 S.W.3d at 814. Where an allegation of ineffective assistance of counsel is not raised in a motion for new trial, trial counsel has no opportunity to explain his conduct and, absent such opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)).

Contrary to Drew's assertions, evidence of Drew's medical conditions and medications was presented to the jury by trial counsel. Trial counsel elicited testimony from various witnesses as to Drew's medical conditions and medications. A friend of Drew,

5

Crystal Wheeler, testified that Drew had undergone eye surgery and had "poor vision." She also answered trial counsel's questions about Drew's allergies, heart medication, and a walking problem. Further, when trial counsel cross-examined Washington, trial counsel raised issues as to Drew's eye problems, medications, and military injuries. In addition, trial counsel elicited testimony of Drew's ankle, shoulder, and knee problems.

Because the jury heard a substantial amount of testimony concerning Drew's medical conditions and medications, Drew's ineffective assistance of counsel argument on these grounds lacks support in the record. To the extent that Drew's argument is that counsel could have introduced more of the same evidence in the form of Drew's medical records, we find that counsel's performance did not fall below an objective standard of reasonableness and was, therefore, not deficient. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812. In any event, even if trial counsel's decision not to introduce medical records was subject to debate, given an undeveloped record on appeal, we are unable to assess the reasonableness of this decision. *See Rylander*, 101 S.W.3d at 110. Accordingly, we overrule Drew's second point of error.

In his third point of error, Drew argues that, despite its open-file policy, the county prosecutor's office "failed to make [Drew's] county jail medical records available to the defense knowing that these medical records contained evidence which supported [Drew's] contention that [Standardized Field Sobriety Testing] test failures were caused by medical conditions or medications." According to Drew:

> the prosecutor had a duty to inform and allow the defense access to these records, and not to argue against the weight of what he [knew] or should have known was the specific medical documentation of [Drew's] condition without other records to the contrary.

A prosecutor is required to disclose to an accused material information that is exculpatory. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The *Brady* rule, however, does not apply when the accused is already aware of the information. *See Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). Drew was aware of his medical condition and knew he was being treated for it. Drew knew of both the existence and content of the medical records documenting his condition and had access to those records. In these circumstances, the *Brady* rule does not apply. *See id.*; *see also Jackson v. State*, 552 S.W.2d 798, 804 (Tex. Crim. App. 1976) ("We cannot conclude that the prosecutor violated his duty to disclose favorable evidence to the appellant when the evidence was already available to him."). Accordingly, we overrule Drew's third point of error.

Having overruled Drew's points of error, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: May 29, 2009

Do Not Publish

7